In the Matter of **ELKAY METAL TURNINGS CORP.**, Alleged Bankrupt.

No. 61B17.

United States District Court
E. D. New York.
Feb. 7, 1961.

Schwartz & Duberstein, Brooklyn, N. Y., for Receiver. Joseph Lewis Simon, New York City, of counsel.

Klein & Opton, New York City, for Bridgeport Brass Co. J. Arthur Bell, New York City, of counsel.

ZAVATT, District Judge.

Bridgeport Brass Company ("Bridgeport") moves to vacate the order of this court, dated January 9, 1961. On that day an involuntary petition in bankruptcy was filed by other creditors of the alleged bankrupt, Elkay Metal Turnings Corp., ("Elkay") and this court made an order enjoining and restraining all creditors, including Bridgeport from removing, selling or disposing of or interfering with any property owned by or in the possession of the alleged bankrupt. Bridgeport moves to vacate this order insofar as it restrains it from selling, moving, transferring or disposing of certain machinery and equipment at the premises of the bankrupt which are described in a chattel mortgage made by the bankrupt to Bridgeport on May 19, 1959.

The moving papers [1] and the oral argument on the motion reveal that Bridgeport had sold goods to Elkay on open account over a period of several years; that by May 19, 1959, Elkay's indebtedness to Bridgeport was $190,000, almost all of which was past due and owing; that as Elkay's indebtedness became larger and larger prior to May 19, 1959, Bridgeport had demanded payment on many occasions; that Elkay, by Louis Kapeloff, its sole stockholder and President expressed a desire to pay but stated that such repayment could only be accomplished if Bridgeport would forbear to pursue its legal remedies to collect the sum due from Elkay; [2] that Bridgeport accordingly asked for and Elkay agreed to give, a promissory note for the then indebtedness of $190,000 and an open end chattel mortgage on Elkay's machinery and equipment to secure that indebtedness and any future indebtedness; that thereupon on May 19, 1959 Elkay duly executed seven demand notes due seven days after demand in the total sum of $190,000 and a chattel mortgage which was thereafter duly executed and recorded. At the same time an employee of Bridgeport was elected to the Board of Directors of Elkay as a watchdog to protect Bridgeport's interests.

The moving papers also narrate that after this mortgage Elkay's financial condition worsened; that Bridgeport extended further credit and that by April 18, 1960 Elkay owed Bridgeport $236,000. On April 18, 1960, Elkay executed and delivered to Bridgeport its demand note for $46,000 and further security: an assignment of accounts receivable in the face amount of approximately $60,000 and an assignment by the sole stockholder of the issued and outstanding stock of Elkay. By January 3, 1961 the indebtedness to Bridgeport was approximately $262,000. Bridgeport made formal demand for this entire indebtedness and Elkay through its president notified Bridgeport that it was unable to pay, whereupon Bridgeport took steps to assume control of Elkay pending dissolution and to realize on the assets covered by its mortgage. On January 3, 1961 (six days before the involuntary petition was filed), Bridgeport took possession of the chatteled machinery pursuant to the terms of the mortgage, noticed in several newpapers a sale to be held on January 9, 1961 and thereafter on January 9, 1961 sold the property at public auction. Bridgeport was the successful bidder at this sale with its bid of $40,000. The order of this court dated January 9, 1961 was signed at approximately 9:15

---

1. The affidavits in support of the motion are by the attorneys for Bridgeport rather than the officers of the company. This was necessitated by the time element. However, the attorneys state that they have personal knowledge of the transactions to be described because they participated therein.

2. But see affidavit of Frank G. Opton, of the same law firm, dated January 24, 1961, "Upon information, Elkay had at no time refused to pay any of its notes or other obligations within the meaning of section 15 of the New York Stock Corporation Law."

a. m. but was not served until sometime after the sale on January 9, 1961.

Bridgeport contends that the chatteled machinery and equipment are not assets of the alleged bankrupt; that the chattel mortgage is invulnerable; that the mortgagee was in due possession of the chatteled articles pursuant to the terms of the mortgage, had a legal right to cause a sale thereof and that the purchaser at the sale has a right to remove the same; that the injunctive provisions of the order of this court place the chatteled items in jeopardy of deterioration while they remain at the unheated premises formerly occupied by the alleged bankrupt.

The Receiver contends that the chattel mortgage is invalid because made at a time when Elkay was insolvent, or its insolvency imminent and made with the intent of giving a preference to Bridgeport over other creditors and with notice to or reasonable cause on the part of Bridgeport to believe that this security would effect a preference.

The moving papers and the oral argument indicate that Bridgeport was aware of the financial condition of Elkay, its accounts receivable, its accounts payable, its assets, etc., at the time when the chattel mortgage was delivered to it. A balance sheet of assets and liabilities of Elkay as of April 30, 1959, attached to the moving papers, shows accounts receivable of approximately $69,000, accounts payable of approximately $227,000 (of which approximately $188,500 were due to Bridgeport). Its machinery and equipment (carried on the books at approximately $291,000) constituted the bulk of its assets which could hardly be regarded as a source from which Elkay could pay its debts in the ordinary course of business.

■ Under section 70, sub. e(1) of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. e(1), a transfer which is voidable under any federal or state law by any creditor of the transferor is null and void as against the trustee.[3] Section 15 of the New York Stock Corporation Law renders invalid a transfer of the property of a corporation, the creation of a lien, and the giving of security by a corporation, which shall have refused to pay any of its obligations when due, at a time when the corporation is insolvent or its insolvency is imminent, with the intention of giving a preference to a particular creditor who has notice or reasonable cause to believe that such transfer, lien or security will effect a preference. As used in section 15 of the New York Stock Corporation Law, "insolvency" means the inability to pay and discharge obligations in the ordinary course of business. Cohen v. Sutherland, 2 Cir., 1958, 257 F.2d 737, 743. The moving papers leave no doubt that Elkay was insolvent in this sense when it executed and delivered the chattel mortgage and that it may have been insolvent in the sense of section 271 of the New York Debtor & Creditor Law, in that the then present fair saleable value of its assets was less than the amount required to pay its liabilities as they became absolute and matured. On the issue of whether there is a real creditor who might take advantage of section 15 of the state law, Bridgeport has not challenged the receiver's assertion that there is such a creditor. Cf. Lewis v. Manufacturers Nat. Bank, 81 S.Ct. 347 (Jan. 9, 1961).

■ I am not persuaded by the moving papers and the oral argument in support of the motion to so vacate the order of this court, that the chattel mortgage is valid. A determination of the critical facts cannot be made on the affidavits before me but rather after the taking of testimony. On the information made available to the court on this motion, however, it appears not unlikely that the chattel mortgage is invalid under section 70, sub. e(1) of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. e(1). The moving party has declined to accept the court's

---

3. Prior to adjudication and the appointment of a trustee the duty of the receiver is to conserve the assets of the estate. Bankruptcy Act § 2, sub. a(3), 11 U.S.C.A. § 11, sub. a(3).

suggestion that the machinery and equipment be sold (Bridgeport desires to sell the same) and that the proceeds of the sale be deposited with the court pending a determination of the relative rights thereto of Bridgeport and the receiver.

The motion of Bridgeport is denied. Settle an order on or before ten days from the date hereof.