**Joseph COHEN, as Trustee in Bankruptcy of New York Investors Mutual Group, Inc., Bankrupt, Plaintiff-Appellant,**

**v.**

**Ida SUTHERLAND, Defendant-Appellee.**

**No. 247, Docket 24877.**

United States Court of Appeals
Second Circuit.

Argued March 24, 1958.

Decided July 30, 1958.

738

Bernard A. Grossman, New York City (Frederic A. Johnson, New York City, on the brief), for plaintiff-appellant.

Alexander Pfeiffer, New York City (Pfeiffer & Crames, New York City, on the brief), for defendant-appellee.

Before CLARK, Chief Judge, LUMBARD, Circuit Judge, and DIMOCK, District Judge.

LUMBARD, Circuit Judge.

Joseph Cohen, trustee in bankruptcy of New York Investors Mutual Group, Inc., appeals from a judgment by Chief Judge Clancy, Southern District of New York, dismissing his complaint at the end of trial. Appellant seeks to set aside a mortgage assignment to the defendant on the ground that it was a voidable preference, a fraudulent conveyance, or a corporate mortgage to which the stockholders did not consent. Sections 69, sub. a, 67, sub. d(2), 70, sub. e, Bankruptcy Act, 11 U.S.C.A. §§ 96, sub. a, 107, sub. d(2), 110, sub. e, New York Debtor and Creditor Law, McKinney's Consol.Laws, c. 12, § 270 et seq., New York Stock Corporation Law, McKinney's Consol.Laws, c. 59, §§ 15 and 16. This appeal primarily turns on the district court's findings of fact that there was no proof of the bankrupt's insolvency before the date of bankruptcy, that there was no evidence the defendant acted in bad faith, and that there was fair consideration for the mortgage.

Since these findings are not clearly erroneous, we affirm the judgment below.

■ Before passing to a recital of what the record discloses and what the district court found, we emphasize that, in seeking to attack the assignment, the trustee has the burden of proving the facts necessary to support his contentions.

The record discloses that in 1954 defendant invested $15,000 in the bankrupt, New York Investors Mutual Group, Inc., one of several business interests of Robert Morman and a corporation of which he was president. The bankrupt, which dealt in realty, purchased numerous properties of the Stuyvesant Estate in a package deal in September 1954, one Rene Frank acting as broker. It thereafter proceeded to sell the properties in separate sales. Early in 1955 defendant became dissatisfied with her investment and through Frank, who was also an investor in the bankrupt, pressed for the return of her money. This demand was satisfied in May by the bankrupt's transfer to her of 30 shares of Fourth Avenue Blockfront Corp., another Morman realty corporation.

On September 5, 1955 the bankrupt paid off a second mortgage on property it owned at 31–35 Third Avenue, the district court finding on conflicting testimony that the payment was in full. In lieu of a satisfaction piece, the mortgagee, Harland Development Corporation, at the request of the bankrupt, assigned a $16,709 interest in the mortgage on September 5 to the defendant, who transferred her Blockfront stock to the bankrupt as consideration for the assignment.[1] Ten days later the Third Avenue property was sold to Beatrice L. Feinstein, who took the property subject to the mortgage.

The record sheds but little light on the value of the Blockfront stock transferred by defendant for the mortgage assignment. It does disclose that the defendant received $187.50 a month for the four months she held the stock, a rate of return of 15% on $15,000. The district court considered these payments to be dividends in the absence of any evidence as to their source.

During 1955 the bankrupt had not always promptly met its obligations. The attorney who handled the Stuyvesant transaction, William L. Reichman, billed the bankrupt for $20,000 on September 20, 1954 and received $4,000 in October. No other payments were made and a suit initiated by Reichman in the spring of 1955 was settled by a stipulation upon which the bankrupt defaulted in October 1955, apparently after bankruptcy. Reichman also testified that the title company was not paid for its part in the Stuyvesant closing at the time of the closing, nor thereafter, except for occasional small payments. After it brought suit in April 1955 it received payments out of the closings of sales by the bankrupt. The bankrupt was also billed on August 1, 1955 by Louis Feinstein for $2,877.50 for services in connection with the closings of bankrupt's realty sales. Although Feinstein asked Morman about it two or three times he testified that he never pressed for payment.

The record indicates that these failures of the bankrupt to make prompt payment were to a considerable extent due to the terms of the mortgage agreements covering the Stuyvesant properties. Four blanket mortgages covered all or most of the properties, the most subordinate being a fourth mortgage on some of the properties. Under the terms

1. The defendant maintained in the district court that she paid $15,000 in cash for the assignment, but, as the district court disbelieved this testimony, she now necessarily depends upon the transfer of the Blockfront stock as fair consideration to support the conveyance. Inasmuch as we hold that there is sufficient evidence to support the district court's conclusion that the Blockfront stock was fair consideration for the assignment to the defendant, we need not consider the evidence regarding the alleged payment of $15,000.

of many of the mortgages the proceeds of sales were required to be used in full to satisfy the second mortgages and additional payments had to be made to the other mortgagees. Initially, therefore, profitable sales would increase the equity of the mortgagor bankrupt but would require the contribution of further liquid assets to the enterprise in order to discharge current obligations. Irwin Landes, a quondam attorney for the bankrupt and for mortgagee Harland Development Corporation, testified that he knew that the bankrupt did not always pay its obligations promptly but "as respects their general assets against their general liabilities I thought they were well off."

On September 19 or 20, 1955, Morman disappeared. Louis Feinstein, husband of Beatrice Feinstein and the agent for both parties in the sale of the Third Avenue property, testified that the disappearance became publicly known immediately thereafter; Frank and Miss Sutherland stated that the news was published shortly before the petition of involuntary bankruptcy was filed on October 5.

■■ The trustee now contends that the mortgage assignment to Miss Sutherland was a voidable preference, § 60, sub. a(1) and (2) of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. a(1) and (2), on the ground that it was a transfer made by a debtor while insolvent to a creditor with notice and within four months of bankruptcy. It is sufficient answer to point out that a voidable preference is dependent on insolvency on the date of transfer and that the district court found that there was no proof of insolvency before October 5. We agree with this finding of the district court.

■ The trustee had the burden of establishing insolvency at the time of the September transfer to the defendant. It was not enough to show that the bankrupt was slow in meeting his current obligations. The trustee had to establish that at the time of transfer the "aggregate of (the bankrupt's) property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts." 11 U.S.C.A. § 1(19). Indeed, the trustee did not even attempt to prove insolvency prior to October 5.[2]

■ The trustee also contends that the transfer was a fraudulent conveyance within § 67, sub. d(2) of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. d(2). This federal codification of the Uniform Fraudulent Conveyance Act sets out four situations in which a transfer is fraudulent.[3] The first three situations, from which fraud is conclusively presumed, regardless of actual intent, each depend upon an absence of "fair consideration" to the debtor in return for his conveyance.

---

2. In argument on a motion to dismiss at the end of the trustee's case, the trustee's attorney stated, "I didn't attempt to prove (insolvency) in the bankruptcy sense because I thought it was an impossible task."

3. "§ 107, sub. d(2) Every transfer made * * * by a debtor * * * is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent; or (b) as to then existing creditors and as to other persons who become creditors during the continuance of a business or transaction, if made or incurred without fair consideration by a debtor who is engaged or is about to engage in such business or transaction, for which the property remaining in his hands is an unreasonably small capital, without regard to his actual intent; or (c) as to then existing and future creditors, if made or incurred without fair consideration by a debtor who intends to incur or believes that he will incur debts beyond his ability to pay as they mature; or (d) as to then existing and future creditors, if made or incurred with actual intent as distinguished from intent presumed in law, to hinder, delay, or defraud either existing or future creditors."

■ The "fair consideration," absence of which brings into operation the first three clauses of § 107, sub. d(2), is not merely the good and valuable consideration necessary to sustain a simple contract. See Cole v. Lama Plastics, Inc., D.C.N.D.Tex.1953, 112 F.Supp. 138, 141. As defined in 11 U.S.C.A. § 107, sub. d(1), "consideration given for the property or obligation of a debtor is 'fair' (1), when, in good faith, in exchange and as a fair equivalent therefor, property is transferred or an antecedent debt is satisfied. * * *" "Fair consideration" requires both a fair equivalent and good faith. See In re Messenger, D.C.E.D.Pa.1940, 32 F.Supp. 490, 494.

■ In ascertaining whether the stock was a fair equivalent for the assignment, it was for the district court, as the trier of fact, to resolve conflicting testimony and inferences. The defendant had previously received this stock as liquidation of a $15,000 investment. Further, monthly checks for $187.50 were received by the defendant while she held the stock, ostensibly as dividends on her Blockfront investment which was a 15% preferred stock. We are not told on whose account these checks were drawn nor how these alleged dividends were earned. In the absence, however, of any indication as to their source, we think the district court could properly infer that the funds were in fact dividends. If so, payments at an annual rate of $2,250 would be strong evidence that the stock was a fair equivalent for a mortgage assignment of $16,709.

■ There remains the question whether the defendant acted, at the time of transfer with the good faith requisite to a finding that the Blockfront stock was a fair consideration. The trustee argues that the subjective intent and purpose of Morman and the defendant must be ascertained as of September 27 as the mortgage was not recorded until then although it had been assigned on September 5. He argues that a transfer is deemed to have been made for the purposes of 11 U.S.C.A. § 107, sub. d when it is so far perfected that no bona fide purchaser from the debtor can obtain rights superior to those of the transferee, 11 U.S.C.A. § 107, sub. d(5), and that the assignment was not so perfected until it was recorded. New York Real Property Law, McKinney's Consol.Laws, c. 50, § 291; Finn v. Wells, 1929, 135 Misc. 53, 237 N.Y.S. 580.

We do not believe that the date on which the assignment was perfected is controlling here. This transfer was not in form by the debtor but by Harland Development Corporation whose mortgage was a recorded encumbrance not discharged of record. Consequently, we fail to see how a subsequent purchaser from the debtor of an interest in the property would have rights superior to Harland's assignee. Drobney v. Sulliban, 1933, 148 Misc. 670, 266 N.Y.S. 245. There was no possibility that the debtor could effect a secret transfer which would inflate the debtor's apparent assets and it is such secret transfers which diminish apparent assets against which the statute in part was designed to protect. Cf. 3 Colliers, Bankruptcy 877 (14th Ed. 1941). We are of the opinion, therefore, that at least for the purpose of ascertaining the good faith of the transferee the critical date is September 5.

■ The district court found that there was no evidence of anything but ignorance on the part of the defendant and that her agent, Frank, did not act in bad faith. The record fully supports this determination. Throughout the course of her dealings with the bankrupt, Miss Sutherland relied on others. She obviously knew little of business or finance and had no knowledge of the financial position of the bankrupt or Morman. Frank did know that Morman had been slow in meeting some obligations, but nothing suggests that he knew more and indeed there is little to indicate that there was more to know. Frank himself was a substantial investor in or creditor of the bankrupt and

at no time prior to bankruptcy took any action indicating that he doubted the bankrupt's solvency.

The trustee further argues that even if the consideration be fair, there was evidence of actual intent "to hinder, delay, or defraud" creditors and the transfer should be set aside as provided by 11 U.S.C.A. § 107, sub. d(2) (d). The district court found that neither the bankrupt nor Morman had such a fraudulent intent.

There is nothing in the record to support any claim of fraudulent intent on September 5 the day of the transfer. It is only Morman's subsequent disappearance about September 19 or 20, which was not generally known until some days later, from which any fraudulent intent may be inferred. On the facts of this record such an inference, unsupported and unaccompanied by any other proof, falls far short of being compelling.[4]

We turn then to the trustee's contention under § 70, sub. e of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. e, that the trustee may nullify transfers which are fraudulent or void under state law. The arguments based upon the New York codification of the Uniform Fraudulent Conveyance Act, New York Debtor and Creditor Law, § 270 et seq., fail for the same reasons which prevent recovery of the funds under § 67, sub. d of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. d.

Two other contentions must be dealt with: that the transfer was a voidable preference by reason of New York Stock Corporation Law, § 15, or was a mortgage void by virtue of § 16 of that Act because of the failure to secure the consent of two-thirds of the stockholders.

 Section 15 invalidates transfers during insolvency or imminent insolvency with intent to prefer a creditor who has notice or reasonable cause to believe that a preference will be effected. Insolvency for the purposes of this Act is the inability to pay and discharge obligations in the ordinary course of business. The definition in the Debtor and Creditor Law, § 271, does not apply. Wilcox v. Goess, D.C.S.D.N.Y.1936, 16 F.Supp. 350, 363, affirmed 2 Cir., 1937, 92 F.2d 8, certiorari denied 303 U.S. 647, 58 S.Ct. 646, 82 L.Ed. 1108. The district court held that such insolvency or imminent insolvency had not been proved. We do not, however, rest on that ground. Since the assignment in fact and in contemplation of law took place on September 5, in return for a fair consideration, there was no antecedent debt and defendant was not a creditor. Consequently, the preference provision is inapplicable.

 Plaintiff says that the assignment of the mortgage to defendant constituted the making of a mortgage and was thus void for lack of the consent of two-thirds of bankrupt's stockholders required by § 16 of the New York Stock Corporation Law.

The assignment to defendant was made while the bankrupt still owned the property and it was an assignment made by the Harland Development Corporation which was the holder of the mortgage. The bankrupt paid the amount of the mortgage to the mortgagee and, as it was entitled under § 275 of the New York Real Property Law, obtained from the mortgagee an assignment to defendant instead of a satisfaction piece. If the mortgage had been satisfied and a new mortgage had been issued to defendant there might be something to plaintiff's point but here, instead of obtaining a satisfaction piece, the bankrupt

---

4. Further, although a fair consideration will not remove the taint of fraud from a transfer made or obligation incurred by a fraudulent bankrupt, a bona fide purchaser for a present fair equivalent value is protected. 11 U.S.C.A. § 107, sub. d(6). We have already upheld the finding that the Blockfront stock was a fair equivalent and it was obviously present consideration. "Bona fide" is used in the same sense as "in good faith," 4 Colliers, Bankruptcy 420 (14th Ed. 1941), and good faith was found here. Hence, even if the transfer were fraudulent by virtue of 11 U.S.C.A. § 107, sub. d(2) (d), it would not be voidable by the trustee.

asked that the mortgagee assign its mortgage to defendant. The transaction was not only in form but in substance an assignment of an existing mortgage. We see no reason for treating it as a new mortgage. No consent under § 16 was required.

The decision of the district court is affirmed.