Conrad B. **DUBERSTEIN**, Plaintiff,

v.

Raymond G. **WERNER**, Defendant.

No. 64–C–522.

United States District Court
E. D. New York.

July 8, 1966.

Max Schwartz, Brooklyn, N. Y., for plaintiff, Joseph Lewis Simon, Brooklyn, N. Y., of counsel.

Isadore B. Hurwitz, New York City, for defendant.

BARTELS, District Judge.

Plaintiff as Trustee in Bankruptcy of Raywal, Inc. (Raywal), a corporation engaged in the business of manufacturing trophies, institutes this action to invalidate a chattel mortgage given by Raywal to the defendant Raymond G. Werner (Werner), an officer, director and stockholder of Raywal, covering all of the equipment and machinery of Raywal and to set aside the foreclosure sale of said equipment and machinery. The Trustee claims (i) that the mortgage was a fraudulent conveyance under Sections 270–276 of the New York Debtor and Creditor Law, McKinney's Consol.Laws, c. 12, and Section 67(d) of the Bankruptcy Act, 11 U.S.C.A. § 107(d), and (ii) that it was executed in violation of Section 15 of the New York Stock Corporation Law, McKinney's Consol.Laws, c. 59.

Prior to the incorporation of Raywal, Werner conducted the business of manufacturing and selling trophies as an independent proprietor, under the name of "Raywal", and, in connection therewith, employed one Walter Soltow (Soltow) at a fixed salary. At that time the business was conducted in the same building where Werner also operated a bowling alley, which building was owned by Werner's father, Alexander Werner. On August 1, 1958, Werner incorporated Raywal and caused the corporation to issue one-third of its shares to himself, one-third of its shares to Soltow, and one-third of its shares to his father, Alexander. At the outset, the officers were Alexander Werner, president; defendant Werner, secretary-treasurer; and Soltow, apparently vice-president. Later Alexander Werner became vice-president and Soltow became president.

Werner claims that he loaned Raywal, from its inception in August, 1958 to March, 1962, the sum of $56,200, and that the initial loans in the amount of $17,100 took the form of "purchases, salaries and all expenses necessary to set up this corporation", and that the salaries were advanced "prior to the formation" of the corporation.

Apparently what happened was, that with minor changes, all of the entries existing on August 1, 1958 with respect to the operation of the business by Werner individually were simply transferred to Raywal as a corporation. The journal entries on Raywal's books (Exhibit 6 attached hereto) graphically depict this transfer. In reality, the entries indicate

that the so-called "assets" of Raywal, against which Werner credits himself with a loan payable, include not only equipment but also purchases and expenses including telephone, travel expenses, promotion expenses and consulting fees, all incurred by Werner in the operation of his business before incorporation. These entries state that two shares of stock were issued to Werner for $2,000 in capital, represented by inventory purchased from Werner, and that one share of stock was issued to Soltow for $1,000 in capital, represented by prepaid consulting fees. The description and value of the inventory allocated to these shares, do not appear. The validity of the issuance of both Werner's and Soltow's shares might be seriously questioned. The debit side of Raywal's books shows a debit of $31,092.32, which is explained on Raywal's books as "monies spent through the books of Lindenhurst Recreational Center by cash to August 1, 1958". Lindenhurst Recreational Center was operated by Werner. There is deducted from said sum of $31,092.32 the sales attributable to Raywal for the same period prior to August 1, 1958, amounting to $16,092.32. Werner is then credited with the balance of $15,000 as a loan payable plus the sum of $2,100 for inventory allegedly sold by him to the corporation, totalling $17,100 of loans payable. It is obvious from the books of the corporation that sums totalling $10,872.87, debited against the corporation and included in the assets of the corporation totalling $31,092.32, were not assets but expenses incurred or paid in the operation of the business prior to incorporation. Morever, the sales amount of $16,092.32, which is reported on the books as a credit, does not represent actual cash or accounts receivable. It is difficult to understand exactly what it represents. Nevertheless, this sum as well as the expenses aggregating $10,872.87 were used as a basis in calculating the total of loans payable to Werner on the date of incorporation. The Court does not believe that such unorthodox bookkeeping entries are sufficient without more to establish a bona fide loan by Werner in the amount claimed of $17,100 on the date of incorporation.

During the eight months following incorporation Werner claims that he made a series of advances to Raywal aggregating $32,900, for which Raywal issued to him notes. Thus, Werner claims that in March, 1959 Raywal already owed him the round sum of $50,000. In addition, he claims that on October 18, 1960 there was owed to him $5,200 for salaries due for an earlier period (the period and salary rate do not appear), for which Raywal issued to him a note for $5,200, and, further, that he made a loan to Raywal in March, 1962, for which Raywal issued another note to him for $1,000, making total loans of $56,200. The books show that Raywal made a payment to Werner of $1,000 in February, 1959, and another payment of $1,500 in June, 1959, reducing the balance owed to him to $53,700. On April 30, 1963, Werner, who was then an officer and director as well as a stockholder of the corporation and the person who in effect controlled the corporation, caused to be issued to himself a mortgage for $53,700, which covered all of the molds, dies and machinery then owned by the corporation, including spray booths, vacuum chambers, ovens, etc. He testified that at the time he took the mortgage he had talked the matter over with Soltow, who was then president, and also expressed his intention to surrender his stock in Raywal and resign as an officer and director. Werner claims that he resigned orally at the time but actually his written resignation was not delivered until June, 1963.

On September 3, 1963, Werner released certain items covered by the mortgage so that Raywal might sell the same for $7,000 and use the proceeds for the corporation's operations. Apparently he realized this was necessary in order to keep Raywal alive a little longer. On October 5, 1963, five months after the mortgage was executed, Raywal executed a general assignment for the benefit of its creditors, and thereafter on February 6, 1964, Raywal was adjudicated a bankrupt in an

involuntary proceeding in which plaintiff was elected as Trustee. Shortly prior to the filing of the general assignment for the benefit of creditors, Raywal voluntarily surrendered to Werner all of the items of equipment and machinery covered by the mortgage except such as had been sold in September, 1963, and permitted this equipment to be trucked out to Werner's father's building in Lindenhurst, where Werner caused a foreclosure sale to be held, at which no one was present except Werner, his father, his attorney, and the auctioneer. The advertisement of sale appeared in a local newspaper in Suffolk County only on the very morning that the sale took place.

I

On April 30, 1963, when Werner took the chattel mortgage, Raywal's current assets were approximately $150,000 (including superannuated accounts receivable of approximately $72,000), its current liabilities were approximately $230,000, and it had a capital deficit of approximately $52,000. There was no question that on that date Raywal's assets were insufficient to pay its liabilities, that it was insolvent, and that it was not in a position to discharge its obligations as they matured. After an examination of the totality of circumstances under which the various Werner loans were created, the manner in which Raywal was incorporated as the successor to Werner's proprietary operations, the pattern of Raywal's operations and Werner's relation thereto, the Court is convinced that Werner knew of Raywal's financial distress and insolvency and its inability to meet its obligations at the time the chattel mortgage was executed to him.

In a case of this type it is also appropriate for the Court to examine Raywal's capital set-up at its inception and during its operations. Raywal's capital of $3,000 was obviously wholly inadequate for the purpose of operating its business. This is illustrated by a comparison of the $3,000 figure as capital with Raywal's gross sales, assets and liabilities for the period of operations from August 1, 1958 to April 30, 1963, as follows:

| Date | Gross Sales | Current Assets | General Liabilities* |
|------|-------------|----------------|----------------------|
| 7/31/59 | $177,000 | $ 61,000 | $ 84,000 |
| 7/31/60 | 512,000 | 119,000 | 131,000 |
| 7/31/61 | 510,000 | 188,000 | 196,000 |
| 7/31/62 | 462,000 | 175,000 | 179,000 |
| 4/30/63 | 256,000 | 150,000 | 230,000 |

* While these are denominated general liabilities, the balance sheet indicates that they were actual current liabilities.

From the foregoing there is no doubt that Raywal's $3,000 capital was purely nominal and insufficient in view of the size of its operations, and that the $50,000 appearing on the books of Raywal after eight months as a debt to Werner, in a debt-equity ratio of 17 to 1, was in fact a capital investment. On August 1, 1961, after three years of operation, the corporation had a capital deficit of $404.55, and for the period from August 1, 1961 to May 31, 1962 it had earnings, after taxes, of $14,499.58, but sustained a loss of $140,639.36 for the period from August 1, 1962 to October 8, 1963. In addition, the balance sheet indicates that on April 30, 1963 Raywal had overdrawn at the Sterling National Bank to the extent of $1,295.98, and had a cash balance at the Long Island Trust Company of only $728.49 and petty cash of only $200. Werner not only incorporated Raywal and transferred his business to it, but also, in effect, controlled at least two-

thirds of its stock and, working with his former employee Soltow as chief officer, was the person who dominated and controlled the corporation. All of this demonstrates that that person must have known of Raywal's precarious financial condition when he caused the mortgage to be executed upon its assets and took the same as security for his alleged indebtedness.

## II

There is more than one legal ground in this case for invalidating Raywal's chattel mortgage to Werner.[1] The Court finds that Werner controlled Raywal at the time of the transfer and that he knew Raywal was insolvent when it delivered the chattel mortgage to him. It is, therefore, confronted with a situation where an officer of a corporation, by reason of his domination and control, causes the corporation to execute and deliver to him a chattel mortgage to secure an antecedent debt of doubtful legitimacy at a time when the corporation was insolvent and when he had knowledge of that fact. The Bankruptcy Act (Act) invalidates various transfers which it characterizes as fraudulent. This transaction falls within the category of at least two of those prohibited transactions.

Section 67(d) (2) (d) of the Act, 11 U.S.C.A. § 107(d) (2) (d), and Section 276 of the New York Debtor and Creditor Law provide that every transfer made by a debtor within one year prior to the filing of a bankruptcy petition is fraudulent "as to then existing and future creditors, if made or incurred with actual intent as distinguished from intent presumed in law, to hinder, delay, or defraud either existing or future creditors". The execution of the chattel mortgage in this case was obviously not an arm's-length transaction. In view of the part Werner played in Raywal's incorporation and the manner in which he financed its operations, his dominance over Raywal and his desire to obtain an advantage over the other creditors, the Court finds that Raywal's transfer to Werner was made with actual intent to hinder, delay and defraud the existing and future creditors of Raywal. See, Lackawanna Pants Mfg. Co. v. Wiseman, 6 Cir. 1943, 133 F.2d 482, 486; In re Peacock Food Markets, 7 Cir. 1939, 108 F.2d 453, cert. denied, Tatle v. Schmidt, 1940, 309 U.S. 676, 60 S.Ct. 714, 84 L.Ed. 1021; Lincoln Theatres Corporation v. Fleming, 4 Cir. 1933, 66 F.2d 441.

Section 67(d) (2) (a) of the Act, 11 U.S.C.A. § 107(d) (2) (a), and Section 273 of the New York Debtor and Creditor Law also condemn as fraudulent as to existing creditors any transfer "made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent". Under these sections "fair consideration" requires not only adequate consideration but also good faith on the part of the transferee. See, Gilmer v. Woodson, 4 Cir. 1964, 332 F.2d 541; Cohen v. Sutherland, 2 Cir. 1958, 257 F.2d 737. The issue is raised as to whether Raywal's transfer to Werner was supported by a "fair consideration" which would demand good faith on the part of Werner as transferee. If Werner were an outsider, the transfer to him would

1. Plaintiff might predicate a claim upon the common law doctrine that officers and directors of an insolvent corporation occupy a fiduciary position towards the creditors of the corporation which, as a matter of common honesty and basic equity, forbids them from obtaining any preference or advantage to the detriment of the other creditors, by reason of a conveyance or chattel mortgage or otherwise. This doctrine is sometimes referred to as the "trust fund" doctrine upon the theory that the directors are either trustees of the insolvent corporation's assets or of the powers possessed by them. See, 15A Fletcher Cyclopedia Corporation [1938 Revd. Vol.] §§ 7468, 7469; Bartle v. Finklestein, 1963, 19 A.D. 2d 256, 241 N.Y.S.2d 655.

be supported by fair consideration if the loans were bona fide. But here Werner was an insider who founded the corporation with insufficient capital and then when it became insolvent, took a chattel mortgage for alleged loans made by him. Based upon all the circumstances, these loans appear to be capital contributions rather than liabilities for advances made. For instance, Raywal began business with $3,000 capital, and loans to Werner of $17,100. At the end of the short period of eight months Werner had built up a claim for loans against the corporation in the round sum of $50,000, with the capital still remaining at $3,000. In addition, he claims that in October, 1960 the corporation owed him $5,200 for back salary, and that he made a loan to the corporation in the amount of $1,000 in 1962. The corporation was launched by the Werner family with obviously insufficient capital and the loans made then and thereafter to it fall within the patterns condemned by Mr. Justice Douglas in Pepper v. Litton, 1939, 308 U.S. 295, 308–310, 60 S.Ct. 238, 246–247, 84 L.Ed. 281, where he said:

"* * * Thus, salary claims of officers, directors, and stockholders in the bankruptcy of 'one-man' or family corporations have been disallowed or subordinated where the courts have been satisfied that allowance of the claims would not be fair or equitable to other creditors. And that result may be reached even though the salary claim has been reduced to judgment. It is reached where the claim asserted is void or voidable because the vote of the interested director or stockholder helped bring it into being or where the history of the corporation shows dominancy and exploitation on the part of the claimant. It is also reached where on the facts the bankrupt has been used merely as a corporate pocket of the dominant stockholder, who, with disregard of the substance or form of corporate management, has treated its affairs as his own. And so-called loans or advances by the dominant or controlling stockholder will be subordinated to claims of other creditors and thus treated in effect as capital contributions by the stockholder not only in the foregoing types of situations but also where the paid-in capital is purely nominal, the capital necessary for the scope and magnitude of the operations of the company being furnished by the stockholder as a loan."

The Court has a right in deciding this case to resort to the broad powers of a bankruptcy court sitting as a court of equity in order that the rights between parties may be properly adjusted according to the Act and the New York Debtor and Creditor Law. Cf., Rosof v. Roth, 2 Cir. 1959, 262 F.2d 829. With this in mind, the Court believes that this is a proper case for the application of the "capital investment" theory to Werner's so-called loans aggregating $50,000 due in March of 1959. Braddy v. Randolph, 4 Cir. 1965, 352 F.2d 80; Costello v. Fazio, 9 Cir. 1958, 256 F.2d 903; Securities and Exchange Commission v. Liberty Baking Corp., 2 Cir. 1957, 240 F.2d 511, cert. denied, 353 U.S. 930, 77 S.Ct. 719, 1 L.Ed.2d 723; Arnold v. Phillips, 5 Cir. 1941, 117 F.2d 497, cert. denied, 313 U.S. 583, 61 S.Ct. 1102, 85 L.Ed. 1539. Under this theory the $50,000 should be and will be treated as Werner's capital contribution to the corporation. The Court also takes cognizance of the fact that Werner was in a fiduciary position of officer, director and dominant stockholder. When the validity of the chattel mortgage to him was challenged, the burden was upon him to establish not only the validity of the transfer but also the amount of the antecedent debt which he claimed was thereby secured. Thus the $5,200 note for alleged back salary, as well as the $50,000 loan, was subject to question. He furnished no evidence indicating the period covered by, or the rate of pay represented by, or the services rendered for, this sum. The Court finds that he failed to sustain his

burden of proof and consequently, for the purpose of this proceeding, that sum should not and will not be considered as part of the antecedent debt secured by the chattel mortgage. The only sum which may be treated as a loan due Werner secured by the chattel mortgage, is the $1,000 represented by a note given to him in March of 1962. Since the assets covered by the chattel mortgage were valued on April 30, 1963 at approximately $21,000 [2], it is clear that the antecedent debt which it secured was disproportionately small as compared with the value of the property obtained and consequently the chattel mortgage was not supported by a "fair consideration" from the standpoint of adequacy and good faith.

The above disposition makes it unnecessary to examine the validity of the foreclosure sale which, to say the least, is open to serious attack.

█ Finally, in answer to the trustee's second contention it is necessary to point out that his reliance on Section 15 of the New York Stock Corporation Law is misplaced. That section was repealed by Section 103 of the Business Corporation Law on September 1, 1963, McKinney's Consol.Laws, c. 4, and the saving clause contained in Section 103(b) protecting accrued causes of action, does not aid the plaintiff since on that date there was no accrued cause of action under Section 15 inasmuch as no creditor had obtained a judgment against Raywal at that time and such a judgment-creditor was necessary for a cause of action to accrue. See, Buttles v. Smith, 1939, 281 N.Y. 226, 22 N.E.2d 350, 353.

This opinion shall constitute the Court's findings of fact and conclusions of law and accordingly plaintiff's motion to invalidate the chattel mortgage and set aside the foreclosure sale is hereby granted. Settle order within four (4) days on two (2) days' notice.

2. This figure was reached as follows: (1) In September, 1963 Werner released some of the equipment from the mortgage which was sold for $7,000; (2) In

November, 1965 a creditor of Raywal offered $14,000 for the remainder of the mortgaged assets.