Abraham S. **ROBINSON**, as Trustee in Bankruptcy of R. Appel, Inc., Appellee,

v.

**COMMERCIAL BANK OF NORTH AMERICA**, Appellant.

No. 358, Docket 28053.

United States Court of Appeals Second Circuit.

Argued June 6, 1963.

Decided July 8, 1963.

Emanuel R. Gold, New York City, on the brief), for appellant.

Murry E. Harston, New York City, for appellee.

Before CLARK and FRIENDLY, Circuit Judges, and ZAVATT, District Judge.*

ZAVATT, District Judge.

This is an appeal from a judgment in the sum of $70,000.00 in favor of the appellee and against the appellant after a trial at which the trial judge submitted the issues of fact to the jury on framed interrogatories, all of which were answered unanimously in favor of the appellee.

The appellee sued, claiming voidable preferences under Bankruptcy Act, §§ 60, sub. a(1) and 60, sub. b, 11 U.S.C. §§ 96, sub. a(1) and 96, sub. b, when R. Appel, Inc., on November 21 and November 29, 1960, and within four months of its bankruptcy, repaid to the appellant loans aggregating $70,000.00. The evidence was sufficient to justify submitting to the jury the question of Appel's insolvency on each of the payment dates and to support the jury's findings that Appel was in fact insolvent when each of these payments was made.

Appellant contends that there was insufficient evidence to submit to the jury the question as to whether appellant, at the time when these payments were made, had reasonable cause to believe that Appel was insolvent. Bankruptcy Act § 60, sub. b, 11 U.S.C. § 96, sub. b. In order to avoid a preferential transfer, it is not necessary to prove that the transferee had actual knowledge or even an actual belief of the insolvency of the transferor. All that is required is proof of reasonable cause to believe that the transferor was insolvent at the time of the preferential transfer. A transferee has such reasonable cause when such a state of facts is brought to his notice respecting the affairs and pecuniary condition of the transferor as would lead a prudent business person to the conclusion that the transferor is insolvent. He may not willfully close his.

Nicholas Atlas, New York City (I. Alan Harris, of Livingston, Livingston & Harris, David S. Edgar, Jr., and

---

* Of the Eastern District of New York, sitting by designation.

eyes in order that he may remain in ignorance of the transferor's condition. Where the circumstances are such as would incite a man of ordinary prudence to make inquiry, the transferee is chargeable with notice of all facts which a reasonably diligent inquiry would have disclosed. "In such case, an inquiry of the debtor alone is generally insufficient, where his answer, under the circumstances, could readily have been found to be untrue. As a matter of fact, it is the creditor's cause for belief and not the debtor's knowledge, or lack of it, that is important. And if the creditor fails to make an inquiry when he has a duty to do so, he will be charged with all the knowledge which he would have acquired had he conducted such an investigation." 3 Collier on Bankruptcy § 60.53 (14th Ed. 1961). See Mayo v. Pioneer Bank & Trust Co., 297 F.2d 392 (5th Cir. 1961); Marks v. Goodyear Rubber Sundries, Inc., 238 F.2d 533, 62 A.L.R.2d 770 (2d Cir. 1956); Margolis v. Gem Factors Corp., 201 F.2d 803 (2d Cir. 1953). On the other hand, it is true that if the known facts raise only a suspicion that the transferor may be insolvent the test is not met. Mayo v. Pioneer Bank & Trust Co., supra, 297 F.2d at 395. Each case must be resolved on its own special facts.

Appel had enjoyed a line of credit up to $70,000.00 with Bankers Trust Company (hereafter "Bankers") for approximately 20 years. In February 1960 it owed Bankers $70,000.00, of which $20,000.00 was then due and $50,000.00 would become due in June 1960. Sometime before May 1960, Bankers refused to renew the $20,000.00 loan; gave Appel until March 17, 1960 to pay $15,000.00 on account and asked Appel to clean up its loans with Bankers by May 16, 1960. Shortly before May 3, 1960 Appel's new accountant went to the Commercial Bank (hereafter "Commercial") and requested the opening of a line of credit on Appel's behalf. He advised Commercial that Appel then owed Bankers $55,000.00; that Bankers insisted on payment; that Bankers had refused Appel's request "to renew $25,000 for 30 days." He submitted to Commercial a financial statement of Appel as of December 31, 1959, which listed as one of Appel's substantial assets an account receivable of $115,995.04 owed to it by Robin Wendy, Inc. He advised Commercial that $55,000.00 of any loan Appel received from Commercial would be paid to Bankers and that the balance would be used as working capital. Commercial agreed to loan Appel $70,000.00, on the basis of this financial statement and on the basis of Commercial's rather cursory credit investigation, which did not include any inquiry as to the Wendy account receivable. On May 3, Appel took a $15,000.00 loan from Commercial payable in 90 days; on May 11 it took a $55,000.00 loan from Commercial payable in 90 days. When the notes came due on August 2 and 9, respectively, 90 day extensions were requested and granted. Before these extensions were granted, Appel advised Commercial that Wendy, Inc. was obtaining a loan of $20,000.00 from a bank in New Jersey and that the proceeds of this loan were to be used by Appel for working capital. In October, Appel's accountant requested further renewals—a renewal to November 20 of the $15,000.00 note that was to mature on November 2 and a renewal to January 9, 1961 of the $55,000.00 note that was to mature on November 9. Commercial requested a more recent financial statement of Appel and a financial statement of Wendy, Inc. No such statements were ever furnished. On November 9, the due date of the $55,000.00 note, Appel's accountant requested a 60 day extension and advised Commercial that, for the first time in its history, Appel intended to factor its accounts receivable. Commercial agreed to a 60 day extension upon the understanding that Appel would pay off its indebtedness to Commercial "as soon as they expected their first advance" under the contemplated factoring agreement. Appel entered into a factoring agreement with James Talcott, Inc. on November 28, 1960, under which Talcott advanced

to Appel the sum of $74,000.00, an amount which exceeded by only $4,000.00 the indebtedness of Appel to Commercial. Commercial also loaned Appel $21,000.00 secured by a chattel mortgage on the property of Robin Wendy, Inc. On November 21, 1960 Appel paid Commercial $15,000.00; on November 29, 1960 it paid Commercial $55,000.00. On March 21, 1961 an involuntary petition was filed against Appel.[1]

 The evidence was adequate to justify submitting to the jury the question of whether or not appellant had reasonable cause to believe that Appel was insolvent when it made the two payments to Commercial and to support the jury's finding that appellant did have such reasonable cause.

Appellant stresses certain comments which were made by the trial judge during the trial and after the case was closed. From these comments it is apparent that the trial judge was of the opinion that there was sufficient evidence to send the case to the jury, despite his opinion that, were he the trier of the facts, he might find for the defendant. His comments, on the one hand, and the findings of the jury, on the other, illustrate that a judge, as a reasonable lawyer, and jurors as reasonable men, can arrive at different findings of fact. "There can be no doubt about the difference between the reasonable lawyer and the reasonable man." Devlin, Trial by Jury, 63 (1956). "Most judges can recall a number of cases which would have been decided differently if they had been sitting alone. That does not mean that one can necessarily say that one or the other must have been in error * * *. [U]sually when there is a difference of opinion the explanation is that the jury has given weight to factors that impress the lay mind more strongly than the legal. * * * This is the eternal conflict between law in the abstract and the justice of the case—how to do what is best in the individual case and yet preserve the rule. It is out of this dialectic that the jury verdict comes. At its best it comes from the coalition of the lay mind with the legal; but if there is conflict, it is the lay mind that predominates. This is what is meant by trial by jury." Ibid. at 123–124.

The judgment is affirmed.

1. Shortly thereafter an involuntary petition was filed against Robin Wendy, Inc. Its President and sole stockholder is a son of Robert and Eva Appel, stockholders and officers of Appel. The schedule of assets and liabilities of Robin Wendy, Inc., executed by its President, did not list as an indebtedness its account payable to Appel which, by November 30, 1960, had increased to the sum of $173,991.57.