**In the Matter of Joseph CICHANOWICZ, Bankrupt.**

**No. 63–B–635.**

United States District Court
E. D. New York.

May 11, 1965.

See also D.C., 226 F.Supp. 288.

Michael F. Friedman, Brooklyn, N. Y., for petitioner.

Albert Sacklow, Mineola, N. Y., for trustee; Leonard Schwartz, Brooklyn, N. Y., trustee, pro se.

BARTELS, District Judge.

In November, 1962, the bankrupt, JOSEPH CICHANOWICZ, a potato farmer, procured a loan from the Security National Bank of Long Island in order that he might be able to farm during the year 1963 (T., p. 12) and to tide him over so that he could sell his potatoes (T., pp. 30, 43); at that time he gave the bank a note endorsed or co-signed by the petitioner (T., pp. 12, 30). The bankrupt could not meet the note when it became due in April, 1963 and therefore it became necessary for him to renew the note on April 9, 1963. Again the petitioner endorsed the note (T., pp. 31, 33, 43). Between November, 1962 and April 9, 1963, petitioner loaned approximately $1700 to the bankrupt to tide him over his financial problems (T. 9/9/64, pp. 3, 4). Ten days later, on April 19, 1963, the bankrupt executed a second mortgage covering certain real property located at Jamesport, New York, to the petitioner as security for the note (T., pp. 32, 56, 57, 67).

Thereafter, on June 25, 1963, less than four months after the transfer, the bankrupt filed a petition in bankruptcy showing liabilities of $120,706.01 and assets of $6,200. The testimony indicated that the bankrupt's financial condition at the time of the transfer was the same as at the time he filed his petition in bankruptcy (T. pp. 50, 53). The record also discloses that the bankrupt had told the petitioner that his financial condition was bad in the fall of 1962 and in the spring of 1963; that the petitioner probably knew that the price of potatoes had gone down, and that the bankrupt had "lost a lot of potatoes that were in storage" (T., p. 39). It was further revealed that at the time of the transfer the bankrupt had actually mortgaged 40,000 bushels of the 55,000 bushels of potatoes owned by him. While no notice of this hypothecation was brought home to the petitioner, he did testify that he was raised on a potato farm and that he was aware that some farmers pledge their potatoes as security for loans made to them (T., p. 79) and further, that he had spoken to the bankrupt about the potato market and that he was aware prior to April, 1963, that the price of potatoes was low (T., pp. 20, 48, 49) and had not increased as expected (T., p. 63).

The petitioner, a lawyer and the brother of the bankrupt, seeks a review of the order of the Honorable William J. Rudin, Referee in Bankruptcy, voiding as a preferential transfer a second mortgage for $13,500, executed by the bankrupt to the petitioner. Among other things, the petitioner claims that the transfer was made more than four months prior to the filing of the petition in bankruptcy but since the petitioner failed to produce any valid proof of this claim at the trial, it must be deemed abandoned in spite of its weak reiteration set forth here.[1] The real claim upon which the petitioner relies is that the Trustee failed to establish that the petitioner had reasonable cause to believe that the debtor was insolvent at the time the mortgage transfer was made. Petitioner also adds in a half-hearted way that the Trustee failed to establish that the debtor was insolvent at the time of the transfer.

The Referee found, as a matter of law, that the bankrupt was insolvent on April 19, 1963, the date of the second mortgage, and that the petitioner had reasonable

---

1. This claim is based upon an alleged agreement entered into with the bankrupt more than four months prior to the filing of the petition in bankruptcy, requiring the delivery of the second mortgage as security for the note endorsement. Under Section 291 of the New York Real Property Law, McKinney's Consol.Laws, c. 50, a mortgage is void against a bona fide purchaser before it is recorded. Section 60, sub. a (2) of the Bankruptcy Act, 11 U.S.C.A. § 96, provides that a transfer of real property is not perfected unless it is immune from attacks by subsequent bonafide purchasers. The alleged transfer in this case was not perfected until April 19, 1963 and consequently did not enjoy such immunity prior thereto.

cause to believe that the bankrupt was insolvent at that time.[2]

The resolution of the issue depends upon whether the petitioner had reasonable cause to believe or merely suspected that his brother Joseph was insolvent at the time the preferential transfer was made. Mere suspicion of insolvency is not enough under the Bankruptcy Act to avoid the transfer. Grant v. First National Bank of Monmouth, 1877, 97 U.S. 80, 24 L.Ed. 971; McDougal v. Central Union Conference Ass'n, 10 Cir. 1940, 110 F.2d 939, 941–942; Stucky v. Masonic Savings Bank, 1883, 108 U.S. 74, 2 S.Ct. 219, 27 L.Ed. 640. On the other hand, "Actual knowledge of insolvency is not required. It is sufficient that a state of facts has been brought to the creditor's attention concerning the affairs and financial condition of the debtor that would lead a prudent businessman to conclude that the debtor is insolvent. The creditor is charged with the knowledge which a reasonably diligent inquiry would disclose." C. A. Swanson & Sons Poultry Company v. Wylie, 9 Cir. 1956, 237 F.2d 16. These two principles are clear but the facts frequently, as in the present case, fall in between.

A creditor who obtains security for an antecedent debt, may not close his eyes to obvious facts or to information which he would ascertain by making the inquiry that a reasonably prudent man would make under similar circumstances. In re Cox, 7 Cir. 1943, 132 F.2d 881; Dean v. Planters National Bank of Hughes, E.D.Ark.1959, 176 F. Supp. 909, 913. When such facts are brought to his notice concerning the pecuniary condition of the debtor which would lead a prudent business person to conclude that the debtor was insolvent, a transferee is charged with reasonable cause to believe that fact, Robinson v. Commercial Bank of North America, 2 Cir. 1963, 320 F.2d 106, 107, since the test of reasonable cause is not subjective but objective. Kravetz v. Joange Building Corp., 2 Cir. 1965, 341 F.2d 561.

It is hardly necessary to refer to General Order 47 in Bankruptcy, 11 U.S.C.A. foll. § 53, to the effect that findings of fact of a referee will not be disturbed by the court unless clearly erroneous, or to the doctrine of the strict enforcement of the rule in this circuit as expressed in Margolis v. Nazareth Fair Grounds & Farmers Mkt., 2 Cir. 1957, 249 F.2d 221, 223. Cases involving reasonable cause to believe present a variety of different circumstances, each case being dependent upon the totality of circumstances as disclosed by its own facts. In a case of this type it is not sufficient that the Court, if it were the trier of the facts, might have reached a different conclusion. The "clearly erroneous" rule applies not only to basic facts but also to differing inferences which may be drawn from those facts. Lamont v. Commissioner of Internal Revenue, 2 Cir. 1964, 339 F.2d 377, 381. The Referee had the opportunity, as the trier of the facts, to hear and observe the witnesses, to appraise their credibility and to determine which is the more reason-

---

2. The Referee found that "Victor Cichanowicz knew his brother needed money—hence the note of November 1962. He knew that this was insufficient, for he lent his brother money in February, March and April of 1963. He knew that the potatoes were still unsold in April and that his brother could not pay off the note of November 1962. Any reasonably prudent man, with possession and knowledge of these facts, would investigate the debtor's entire financial position. Such an investigation would have revealed chattel mortgages on farm equipment and crop mortgages on a portion of the harvested potato crop. (40,000 bu. of potatoes, out of 55,000 bu. were mortgaged, according to the testimony of the debtor * * *.) In fact, the bankrupt testified that Victor knew of the debtor's bad financial condition, because the debtor told him about it. * * * Victor Cichanowicz could have learned that his brother owed $68,536.45. * * * Whether or not the debtor's cash position was 'critical', as respondent said it was not, is immaterial. As investigation would have disclosed the debtor's true financial picture and thus his insolvent condition."

able inference to draw from the circumstances. In re Cox, supra. While speculation cannot be substituted for proof, the findings and conclusions of the trier must be accepted unless the Court has a firm conviction that a mistake has been committed. United States v. United States Gypsum Co., 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746. The Court has no such conviction in this case.

Upon the record as a whole, the Court cannot say that the findings and conclusions of the Referee are clearly erroneous. Therefore, they are adopted and confirmed and the objections thereto are overruled. Enter order accordingly upon two (2) days' notice.