**In re GREENBROOK CARPET CO., INC., Debtor.**

**Howard W. JONES, as Trustee in Bankruptcy, Plaintiff,**

**v.**

**J. E. G. ENTERPRISES, INC., Defendant.**

**Howard W. JONES, as Trustee in Bankruptcy, Plaintiff,**

**v.**

**CALHOUN FIRST NATIONAL BANK, Defendant.**

Bankruptcy No. 81–0069R.
Adv. Nos. 81–0193R, 81–0192R.

United States Bankruptcy Court,
N. D. Georgia,
Rome Division.

April 30, 1982.

mination as to whether any portion of a federal income tax refund was property of the estate or JEG.

JEG answered the complaint and counterclaimed for administrative rent in Count One for the storage of carpet racks in GREENBROOK's former business premises and in Count Two for damages resulting from the alleged conversion of an air compressor and water cooler valued at $4,800. At a later hearing, Count Two of JEG's counterclaim was severed and was not considered at the trial held on this matter.

On August 7, 1981, the Trustee filed a separate complaint against CALHOUN FIRST NATIONAL BANK (hereinafter referred to as "CFNB") seeking to recover monies paid by GREENBROOK to JEG which were then paid to CFNB. The trustee alleged a violation of §§ 547 and 550 of the Bankruptcy Code. CFNB answered the complaint and denied any liability to the Trustee.

Upon motion of the Trustee, the two actions against JEG and CFNB were consolidated and on November 23, 1981, a trial of these issues was held.

Howard W. Jones, Calhoun, Ga., for trustee.

T. Joseph Campbell, Calhoun, Ga., for J. E. G. Enterprises, Inc.

William P. Bailey, Calhoun, Ga., for Calhoun First Nat. Bank.

## ORDER

HUGH ROBINSON, Bankruptcy Judge.

On August 7, 1981, HOWARD W. JONES, as Trustee in Bankruptcy of GREENBROOK CARPET CO., INC., filed a preference action against Defendant, J.E.G. ENTERPRISES, INC. (hereinafter referred to as "JEG") under § 547 of the Bankruptcy Code, seeking a return of monies paid by GREENBROOK CARPET CO., INC. (hereinafter referred to as "GREEN-BROOK") to JEG. The Trustee's complaint was subsequently amended to seek a deter-

## FINDINGS OF FACT

JEG is the owner of more than 50 percent of the common stock of GREENBROOK. JEG and GREENBROOK have the same officers who controlled the two companies.

Prior to July 1979, JEG owned improved real estate in Gordon County, Georgia, and leased these business facilities, consisting of 20,000 square feet of offices and a warehouse-type facility, to GREENBROOK. GREENBROOK's lease payments of $2,914 to JEG approximated the note payments which JEG owed to CFNB. On July 20, 1979, JEG and GREENBROOK executed a $350,000 note to CFNB which was guaranteed by the SMALL BUSINESS ADMINISTRATION (hereinafter referred to as "SBA"). A portion of the loan proceeds was used to pay off a previous JEG/CFNB note and the balance ($195,179.04) was received by GREENBROOK as working capital and for other business purposes. From

July 1979, GREENBROOK's monthly lease payments to JEG approximated the amount necessary for JEG to amortize the installment payments due CFNB in an amount of approximately $6,600 per month. This practice continued into October 1980 and GREENBROOK timely made its payment to JEG, which, in turn, paid CFNB.

JEG, being the major stockholder of GREENBROOK, filed a consolidated financial statement with GREENBROOK. Generally, JEG's principal business purpose was the ownership of improved real estate leased to GREENBROOK, and the ownership of GREENBROOK common stock. As stated by CFNB's President, JEG was a shell holding company. In GREENBROOK's recent fiscal years it had had profitable operations.

In November 1980, a consolidated audited financial statement of GREENBROOK and JEG for the fiscal year ending June 28, 1980 was delivered to officers of GREENBROOK and showed a consolidated business loss of $694,957. This reduced the net worth of the two companies to a negative amount of $481,153. Since JEG's business income arose from rent payments and their expenses came from depreciation of the real estate and interest payments, only a small portion of the business loss was attributable to JEG.

In February 1980, BILLY GREEN and BOBBY GREEN, officers of JEG and GREENBROOK, bought the controlling interest in LEWIS CARPET MILLS, INC. in Cartersville, Georgia. This purchase was intended to allow GREENBROOK to save $.20–.30 per yard in the manufacturing of carpet. Because of older equipment and inefficient plant operation, LEWIS CARPET MILLS, INC.'s (hereinafter referred to as "LEWIS") production of carpet cost GREENBROOK $.40 per yard more than GREENBROOK previously paid.

Prior to the purchase of LEWIS stock, the most recent LEWIS financial statement of October 1979 indicated that LEWIS had made a small profit. When the fiscal year ended in February 1980, LEWIS had lost $1,300,000. These audited figures were given to BILLY and BOBBY GREEN in July 1980.

As of June 28, 1980, after corresponding debts were offset between JEG and GREENBROOK, GREENBROOK owed to JEG the sum of $162,922.33 on an unsecured basis from the loan proceeds obtained in July 1979.

Beginning on October 10, 1980 and continuing through March 1981, GREENBROOK paid monies to JEG which were not associated with the previous lease payments made by GREENBROOK to JEG, and JEG readvanced monies to GREENBROOK. The net amount of monies received by JEG from GREENBROOK was $87,251.76. JEG paid various other debts and obligations of GREENBROOK, being notes to CFNB, legal and accountant's fees, life insurance payments, and lease payments. The net amount received by JEG from GREENBROOK was $43,992.34.

From October 1980 through late February 1981, BILLY GREEN, President of GREENBROOK, authorized $128,000 to be paid to JEG. Mr. GREEN testified that he was concerned that two of his larger creditors, HAWTHORNE INDUSTRIES, INC. and JOHN P. MAGUIRE & CO., INC. might attach GREENBROOK's account and tie up GREENBROOK's capital. He wanted to insure that money would be available to GREENBROOK's employees and for ongoing bills.

CFNB had a normal business practice of obtaining annual financial reports of their corporate debtors. CFNB had requested a 1980 fiscal year financial statement from GREENBROOK. Prior to receiving GREENBROOK's latest financial information, CFNB was under the impression that GREENBROOK's business operations were normal. On January 12, 1981, CFNB received a copy of the GREENBROOK/JEG statement showing approximately $700,000 of business losses and close to $500,000 of negative net worth. In the words of JOHN DAVIS, then President of CFNB, the losses were "a very nasty surprise." Internal memoranda between JOHN DAVIS and FRANK HUTCHINSON, Vice-President of

CFNB and a loan officer, ensued. Each CFNB officer commented on GREENBROOK's potential for becoming involved in a bankruptcy situation and going out of business.

CFNB's principal concern was whether there was enough value left in CFNB's collateral if liquidation of GREENBROOK became necessary.

After CFNB received notice of GREENBROOK's insolvency, JOHN DAVIS spoke with BILLY GREEN about GREENBROOK's financial situation, and the status of CFNB's collateral should liquidation of GREENBROOK occur.

On February 19, 1981, JEG paid CFNB $30,000. Within 30 days, CFNB received an additional amount of $24,617.86. Through the March 1981 SBA monthly loan payment, CFNB received a total of $44,000 that was first applied to the reduction of principal of the note. In late April-early May 1981, officers of JEG requested that CFNB reapply the $44,000 of payments to the monthly installments. This reapplication had the effect of JEG prepaying the monthly loan of the SMALL BUSINESS ADMINISTRATION note through September 1981.

An order for relief was filed against GREENBROOK on March 16, 1981. Prior to this time, JEG sought a State of Georgia corporate income tax refund for the previous year's losses. On April 15, 1981, JEG received the State of Georgia refund check in the amount of $12,711. JEG's applicable portion of the refund check was stipulated between the parties to be $793 with GREENBROOK's portion to be $11,918. On September 1, 1981, $10,198.67 of the tax refund check was deposited in a joint money-market certificate of deposit in the name of the Trustee and the attorney for JEG. The difference between $11,918 and $10,-198.97 was used by JEG to pay a portion of JEG's claims for administrative rent. These payments were unknown to the Trustee from the time the check was received in April 1981 until the time when the joint deposit was created in September 1981.

From March 16, 1982, when an order for relief was filed against GREENBROOK

CARPET CO., INC., until June 20, 1981, when GREENBROOK equipment was sold and removed from the premises, the Trustee occupied the GREENBROOK facilities in Calhoun, Georgia. The March 1982 mortgage payment was paid by JEG to CFNB from monies transferred to JEG by GREENBROOK. Prior to the Trustee's learning of the alleged preference payments from GREENBROOK to JEG as previously referenced, the Trustee paid April rent in the amount of $500 to JEG.

The bankruptcy estate has at the business premises older carpet racks of 3,500 square feet in a warehouse facility in which access and control have been given to JEG from June 20, 1981 to the current period of time.

The parties have stipulated that $10 per square foot is a fair rental value for the storage of this equipment.

## CONCLUSIONS OF LAW

*Preference of JEG.* The bedrock philosophy of the Bankruptcy Code is an equality of a division of assets for all creditors of the debtor. *Carright v. General Finance Corp.,* 35 F.Supp. 841 (E.D.Ill.1940), aff'd, 123 F.2d 98 (7th Cir. 1941).

§ 547 of the Bankruptcy Code allows the Trustee to recover transfers of the debtor's property which allow some creditors to receive payments in a greater proportion to their debt than other creditors. This is commonly referred to as a "preference" action.

■ The Trustee has the burden of proof in showing that the six elements of an avoidable preference have occurred. *Kagen v. Stroyman,* 63 F.Supp. 417 (D.Mass.1945). JEG stipulated that they were an unsecured creditor of GREENBROOK; further, it was stipulated that JEG received a transfer of GREENBROOK's property. Since JEG is an "insider" as contemplated by § 101(25) of the Bankruptcy Code, the transfer was made within the prohibitive period of time, which had the effect of diminishing assets of the GREENBROOK estate.

The two elements that were not agreed upon were the insolvency of the Debtor under § 547(b)(3) and that JEG received a greater percent of distribution than what would have occurred in a normal liquidation, as provided under § 547(b)(5).

■ As to the element of insolvency, the facts are clear that the audited financial statement of JEG and GREENBROOK as of June 28, 1980 showed negative net worth of JEG and GREENBROOK of $481,153. The most significant portion of the loss was attributable to GREENBROOK. From July 1981 to the date of adjudication in March 1981, GREENBROOK's financial condition never reverted to a solvency position. Thus, the insolvency element has been established by the Trustee.

As to the percentage of distribution received by JEG, the facts revealed that JEG's debt as of June 28, 1980 was $162,922; but when GREENBROOK filed its bankruptcy schedules, JEG was listed as an unsecured creditor in the amount of $46,000. Thus, from July 1, 1980 through March 1981, JEG's debt was reduced by approximately 75 percent.

From the testimony of the accountant for the Trustee and BILLY GREEN, President of JEG and GREENBROOK, the Trustee has met the burden of proof that JEG received an avoidable preference under § 547 of the Bankruptcy Code in the amount of $43,992.34.

■ *Transfer to CFNB.* In addition to the Trustee's avoidance of preferential payments to JEG, the Trustee sought to recover payments which JEG made to CFNB under 11 U.S.C. § 550(a)(2). This section attempts to give an avoidance cause of action against any immediate or mediate transfer of such initial transferee. Since GREENBROOK paid monies to JEG and, JEG, in turn, paid monies to CFNB, if the Trustee can obtain a recovery against JEG under a preference cause of action, then the Trustee can follow the payment of monies to CFNB and similarly recover from CFNB the monies it received from JEG if the elements of 11 U.S.C. § 550 are established.

Under § 550(b), the Trustee can only prevail against CFNB if the Trustee shows that CFNB's receipt of monies from JEG was not in good faith. The case law decided under § 550 and its predecessor provisions, § 67(a)(3) and 70(d)(5), are not abundant.

As the facts were developed in this trial, prior to receipt of GREENBROOK's financial statement on January 12, 1981, CFNB had no idea that GREENBROOK was in financial trouble. The testimony of JOHN DAVIS, President of CFNB, was that GREENBROOK's SBA note was being paid timely and in an ordinary manner. Though CFNB had requested a copy of the financial statement, that request did not start to put CFNB on any inquiry notice of GREENBROOK's having any sort of financial problems.

Upon CFNB obtaining the financial statement, characterized by JOHN DAVIS as "a very nasty surprise," internal memoranda developed between JOHN DAVIS and FRANK HUTCHINSON, Vice-President of CFNB, as to an analysis of GREENBROOK's financial future. As testified by JOHN DAVIS and as set out in the memoranda dated late January 1981, CFNB was aware that GREENBROOK's future looked bleak and bankruptcy loomed as a possibility.

It was brought out in the trial that of the $128,000 paid by GREENBROOK to JEG, $98,000 occurred prior to January 12, 1981. Yet, the irregular, unusual payments received by CFNB from JEG did not occur until February 19, 1981 when CFNB received $30,000, which was about two weeks after GREENBROOK had had an involuntary bankruptcy proceeding brought against them.

"The term, 'good faith,' does not merely mean the opposite of the phrase 'actual intent to defraud.' That is to say, an absence of fraudulent intent does not mean that the transaction was necessarily entered into in good faith. The lack of good faith imports a failure to deal honestly, fairly and openly." *Southern Industries, Inc. v. Jeremias,* 66 A.D.2d 178, 183, 411 N.Y.S.2d

945 (2d Dep't 1978). Good faith may be lacking because of a transferee's knowledge of a transferor's unfavorable financial condition at the time of the transfer (*Cohen v. Sutherland*, 257 F.2d 737, 742 (2nd Cir. 1958) or because of a transferee's position as an insider with control over the corporation's finances (*Duberstein v. Werner*, 256 F.Supp. 515 (E.D.N.Y.1966)). *In Re Checkmate Stereo & Electronics, Ltd.*, 9 B.R. 585, 617 (Bkrtcy., E.D.N.Y.1981).

In the context of this case, CFNB's knowledge of insolvency from its review of the financial statement of GREENBROOK creates the inference of bad faith.

There is a wealth of case authority under § 60 of the old Bankruptcy Act as to when a preferential transferee should have been put on an inquiry notice into the financial condition of a debtor. *Robinson v. Commercial Bank of North America*, 320 F.2d 106, 107–108 (2d Cir. 1963); *Miller v. Wells Fargo Bank International Corp.*, 406 F.Supp. 452 (S.D.N.Y.1975), aff'd, 540 F.2d 548 (2nd Cir. 1976).

As cautioned by Judge Friendly in *In Re Hygrade Envelope Corp.*, 366 F.2d 584 (2nd Cir. 1966), a creditor cannot close his eyes so as to remain ignorant of the debtor's financial condition.

Coincidentally or not, after CFNB learned of the insolvent financial condition of GREENBROOK, and spoke with BILLY GREEN, then and only then did JEG start to make the first $30,000 payment to CFNB and additional payments totaling close to $44,000.

■ CFNB's knowledge of GREENBROOK's insolvency and awareness of JEG's close dependent relationship to GREENBROOK renders CFNB's receipt of payments from JEG subject to avoidance by the Trustee under § 550 of the Bankruptcy Code since CFNB was not a good faith transferee of preferential payments received by JEG.

■ *Income Tax Refund.* The State of Georgia income tax refund received by JEG in the amount of $10,198.67 existing in a joint certificate of deposit is property of this estate under § 541. No facts or counter-arguments were set forth by JEG to claim any portion of the State of Georgia income tax refund. As set forth in *Colliers*, 15th Ed., § 541.01, property of the estate is comprised of all legal or equitable interest of debtor in property wherever located as of the date the case is commenced. This provision is very broad and includes all kinds of property both tangible and intangible, causes of action, and all other forms of property formerly specified in § 70(a) of the Bankruptcy Act. Tax refunds have been regarded as property of the estate. *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966).

■ *Administrative Rent.* JEG sought administrative rent from the Trustee for the use of JEG's facilities from May 1, 1981 through June 20, 1981 for storage of Debtor's equipment and from July 1, 1981 to date for storage of carpet racks. In the brief filed by JEG through February 1982, JEG claims rent due of $2,464.01 after the bankruptcy estate is given credit of $1,719.33 of State of Georgia tax refunds unilaterally deducted by JEG unknown to the Trustee in Bankruptcy.

The Trustee contends that § 510(c) of the Bankruptcy Code should be invoked to subordinate JEG's claim in view of JEG's conduct in

(1) retaining the State of Georgia income tax refund check,

(2) unilaterally deducting a portion of the proceeds, and

(3) using GREENBROOK monies to prepay JEG's mortgage payments for a six-month period of time under the Trustee's preference action.

The claim of JEG for administrative rent is tainted by corporate insiders, who, as officers of both corporations, J. E. G. ENTERPRISES, INC. and GREENBROOK CARPET CO., INC., allowed GREENBROOK's funds to be used to prepay for six months the CFNB mortgage associated with the building owned by JEG. Further, this Court has found that the same officers of JEG and GREENBROOK have personal-

ly guaranteed the CFNB note. The acts of these GREENBROOK corporate officers have been found to favor and enhance their own insider, corporate creditor, and major GREENBROOK stockholder, JEG, and CFNB, with which these corporate officers had some personal debt liability.

As set out in *In Re Branding Iron Steak House*, 536 F.2d 299 (9th Cir. 1976), this Court has not looked into the applicability of § 510(c) of the Bankruptcy Code merely because JEG's administrative rent claim is associated with common corporate control. What is significant and relevant to the application of § 510 of the Bankruptcy Code to the administrative rent claim of JEG is conduct by corporate officers as follows:

(a) attempt to divert GREENBROOK assets into an account to avoid these funds being attached by claims of other creditors, and

(b) utilization of such funds to pay a creditor to whom JEG/GREENBROOK and the corporate officers controlling these accounts are personally liable, such as CFNB.

When this inquiry is taken one step further to show that a State of Georgia income tax refund check is received by officers of JEG after the filing of the bankruptcy and held for four months, and a portion of the tax refund monies are unilaterally used by JEG purportedly to apply to some administrative rent claim, then the prohibitions set out in *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1935) to the treatment of claims are brought into force and effect.

This Court finds that the conditions set out in *In Re: Mobile Steel Co.*, 563 F.2d 692 (5th Cir. 1977) have been met in that the conduct which JEG has engaged in through its officers is inequitable conduct. This misconduct has resulted in injury to the creditors of GREENBROOK. Under such circumstances equitable subordination of JEG's administrative rent claim is not inconsistent with the provisions of the Bankruptcy Act.

Therefore, the claim of JEG for administrative rent is allowed but shall be subordinated to the claims of other unsecured creditors of this estate. The Trustee shall remove those carpet racks of the bankruptcy estate from JEG's premises by May 31, 1982.

### JUDGMENT

For the reasons stated in the order entered this date, IT IS THE JUDGMENT OF THIS COURT THAT:

(a) HOWARD W. JONES, Trustee in Bankruptcy of GREENBROOK CARPET CO., INC., shall have judgment against J. E. G. ENTERPRISES, INC. and CALHOUN FIRST NATIONAL BANK, jointly and severally, in the amount of $43,992.34 for payments received in violation of §§ 547 and 550 of the Bankruptcy Code, together with interest due on such principal amount from August 7, 1981 until paid.

(b) HOWARD W. JONES, Trustee in Bankruptcy of GREENBROOK CARPET CO., INC., shall have title and ownership to a State of Georgia income tax refund in the principal amount of $10,198.67, with accrued interest associated with the certificate of deposit jointly held by J. E. G. ENTERPRISES, INC. and the Trustee.

(c) The administrative rent claim of J. E. G. ENTERPRISES, INC. is hereby allowed; however, said claim is equitably subordinated to the claims of other unsecured creditors of this estate.