856 F.2d 12
 28 ERC 1209, 103 A.L.R.Fed. 61, 57
USLW 2291,
18 Bankr.Ct.Dec. 528, Bankr. L. Rep. P 72,451,
18 Envtl. L. Rep. 21,472
 In re SMITH-DOUGLASS, INC., Debtor.
BORDEN, INC., Plaintiff-Appellant,
and
Bernard R. Garrett; State of Illinois, Plaintiffs,
v.
WELLS-FARGO BUSINESS CREDIT; Defendant-Appellee,
Gregory B. Crampton, Trustee for Smith-Douglass, Inc., Appellee.
In re SMITH-DOUGLASS, INC., Debtor.
STATE OF ILLINOIS, Plaintiff-Appellant,
and
Borden, Inc.; Bernard R. Garrett, Plaintiffs,
v.
WELLS-FARGO BUSINESS CREDIT; Defendant-Appellee,
Gregory B. Crampton, Trustee for Smith-Douglass, Inc., Appellee.
 Nos. 87-1683, 87-1684.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 4, 1988.
Decided Sept. 6, 1988.
 
 1
 John M. Murchison, Jr. (Kennedy, Covington, Lobdell & Hickman, Charlotte, N.C., Thomas W. Hill, Melvin D. Weinstein, Emens, Hurd, Kegler & Ritter, Columbus, Ohio, on brief), for Borden, Inc.
 
 
 2
 Marcia Bellows, Asst. Atty. Gen., Environmental Control Div., Chicago, Ill. (Neil F. Hartigan, Atty. Gen., Shawn W. Denney, Sol. Gen., Springfield, Ill., on brief) for State of Ill.
 
 
 3
 Gregory B. Crampton (Merriman, Nicholls & Crampton, P.A., Raleigh, N.C., on brief), for Gregory B. Crampton, Trustee.
 
 
 4
 Thomas B. Anderson, Jr. (Jenkins & Gilchrist, P.C., Dallas, Tex., on brief), for Wells Fargo Business Credit.
 
 
 5
 Before HALL and WILKINSON, Circuit Judges, and MERHIGE, Senior District Judge for the Eastern District of Virginia, sitting by designation.
 
 MERHIGE, Senior District Judge:
 
 6
 The matter before the Court presents the question of the conditions under which a trustee in bankruptcy will be permitted to abandon property on which violations of state environmental laws exist. For the reasons set forth below, we affirm the finding that unconditional abandonment was appropriate.
 
 Background
 
 7
 In the course of its attempted reorganization,[1] the debtor Smith-Douglass, Inc. ("Smith-Douglass" ) moved to abandon its fertilizer plant at Streator, Illinois. The State of Illinois, Bernard Garrett ("Garrett"), and Borden, Inc. ("Borden") objected on the ground that the property contained violations of Illinois environmental laws and regulations. The Bankruptcy Court granted the debtor's request and the district court affirmed.
 
 
 8
 The Streator facility was formerly owned by Borden and operated by the Smith-Douglass division of Borden as a fertilizer plant. In 1981, certain assets of Borden's Smith-Douglass Division including the Streator facility were acquired by Garrett Acquisition Corporation ("GAC"), which was then renamed Smith-Douglass, Inc. Wells Fargo financed GAC's purchase and received a first lien on all the properties.
 
 
 9
 On March 11, 1983, Smith-Douglass filed a voluntary petition under Chapter 11 of the bankruptcy code. Three months later, Smith-Douglass leased the Streator plant to another company, SECO, Incorporated ("SECO"), which is now in bankruptcy. SECO left the premises in August, 1985 and operations ceased.
 
 
 10
 At some point after the petition was filed, Smith-Douglass concluded that it would not be able to reorganize successfully. Wells Fargo, as first lien creditor, agreed to provide post-petition financing while Smith-Douglass liquidated its assets. There were no unencumbered assets.
 
 
 11
 Smith-Douglass attempted, unsuccessfully, to sell the Streator facility both privately and by public auction. By mid-1986, the Streator facility was the only piece of property remaining in the estate. The debtor moved for leave to abandon the property and Wells Fargo moved for leave to terminate funding of post-petition operations.
 
 
 12
 An evidentiary hearing was held on June 30, 1986. The debtor's motion to abandon was supported by Wells Fargo. Borden, Garrett and the State of Illinois opposed the proposed unconditional abandonment on the ground that the debtor should be required to clean up alleged environmental hazards.[2]
 
 
 13
 The bankruptcy court found that conditions at the Streator facility violated provisions of the Illinois Environmental Protection Act and regulations promulgated thereunder in the following respects:
 
 
 14
 A. Ponds 1, 2, 3, 4 and 5 were considered as treatment works, but they were operated without operating permits.
 
 
 15
 B. Pond 2 was subject to flooding during wet weather periods. It was not constructed, nor was it being operated, to minimize violations during such wet weather periods.
 
 
 16
 C. Contaminants were deposited upon the land so as to create a water pollution hazard. Contaminants also had entered waters of the state at a number of locations at the facility and had caused violations of the Stream Water Quality Standards.
 
 
 17
 D. The discharge from sewer 4 and the discharge ditch out of pond 4 were considered point source discharges which require National Pollutant Discharge Elimination System permits. The facility had no such permits.
 
 
 18
 E. Waters in the abandoned creek bed violated the water quality standards as follows:
 
 
 19
 1. The waters contained unnatural sludge, bottom deposits, color and turbidity.
 
 
 20
 2. Two water samples demonstrated a low pH (less than 6.5) and contamination by excessive amounts of fluoride, sulfate, cadmium, iron, and manganese.
 
 
 21
 F. Contaminants were entering Phillips Creek, causing the creek to contain unnatural sludge, bottom deposits, color and turbidity.
 
 
 22
 G. Waters contained in the roadside ditch adjacent to Smith-Douglass Road violated water quality standards as follows:
 
 
 23
 1. The waters contained unnatural sludge, bottom deposits, color, turbidity and odor.
 
 
 24
 2. A water sample showed a low pH (less than 6.5) and contamination by excessive amounts of fluoride, sulfate, iron, and manganese.
 
 
 25
 H. A sediment sample at pond 2 indicated an arsenic concentration that is higher than authorized but not at the danger level.
 
 
 26
 I. A liquid sample in a sump at the base of two tanks had a pH of less than one which is considered "hazardous" under regulations.
 
 
 27
 J. There were several 55 gallon drums of liquid waste with a flash point below 140.
 
 
 28
 K. One 55 gallon drum contained hazardous waste.
 
 
 29
 L. There were over ten drums of spent vanadium pentoxide waste which is a hazardous waste.
 
 
 30
 M. Three tanks contained spent sulfuric acid.
 
 
 31
 The evidence further demonstrated that the State of Illinois monitored the facility. The Illinois Environmental Protection Agency had made on-site inspections and received environmental reports from the debtor and its predecessor. The state agency, however, never took any enforcement action against any owner of the Streator facility for environmental violations. Though concluding that violations of state environmental laws existed, the Court found that they did not present any imminent harm or danger to the public. Coupling that conclusion with the fact that the debtor was devoid of unencumbered assets with which to finance a clean up, the bankruptcy court authorized unconditional abandonment of the facility.
 
 
 32
 The district court affirmed on the ground that abandonment is precluded only where there is an imminent danger present, and the bankruptcy court's determination that there was no such imminent danger was not clearly erroneous. 75 B.R. 994 (E.D.N.C.1987). The district court, however, found the bankruptcy court's consideration of the financial condition of the debtor irrelevant. Borden and Illinois appealed.
 
 Discussion
 
 33
 A trustee may abandon burdensome, income-draining property pursuant to section 554(a) of the Bankruptcy Code (the "Code").[3] In Midlantic National Bank v. New Jersey Department of Environmental Protection, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), the Court recognized a narrow exception to that power. The issues before this Court relate to the contours of that exception.[4]
 
 
 34
 In Midlantic, a five member majority held that "a trustee may not abandon property in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards." 474 U.S. at 507, 106 S.Ct. at 762. The Court qualified the holding with the following footnote:
 
 
 35
 This exception to the abandonment power vested in the trustee by Sec. 554 is a narrow one. It does not encompass a speculative or indeterminate future violation of such laws that may stem from abandonment. The abandonment power is not to be fettered by laws or regulations not reasonably calculated to protect the public health or safety from imminent and identifiable harm.
 
 
 36
 Id. at 507 n. 9, 106 S.Ct. at 762 n. 9.
 
 
 37
 Little in the Midlantic opinion elucidates the meaning of this qualification. Not surprisingly, the bankruptcy courts interpreting Midlantic have reached inconsistent results. Some courts have determined that the Midlantic exception applies only where there is an imminent danger to public health and safety. See, e.g., In re Purco, Inc., 76 B.R. 523, 533 (Bankr.W.D.Pa.1987); In re Franklin Signal Corp., 65 B.R. 268, 271-72 (Bankr.D.Minn.1986). Other courts have determined that Midlantic requires full compliance, prior to abandonment, with the applicable environmental law. In re Peerless Plating Co., 70 B.R. 943, 946-47 & n. 1 (Bankr.W.D.Mich.1987).
 
 
 38
 The problem faced by the Midlantic court was a conflict in the implementation of two statutes, one state and one federal, both of which serve important purposes. Under the Supremacy Clause of Article VI of the United States Constitution, when enforcement of a state law or regulation would undermine or stand as an obstacle to the accomplishment of the full purposes and objectives of Congress in enacting a federal statute, the conflict must be resolved in favor of the federal law. Hines v. Davidowitz, 312 U.S. 52, 66-67, 61 S.Ct. 399, 403-04, 85 L.Ed. 581 (1941). The overriding purpose of the Code is the expeditious and equitable distribution of the assets of the debtor's estate. Midlantic, 474 U.S. at 508, 106 S.Ct. at 763 (Rehnquist, J., dissenting). State laws which obstruct expeditious and equitable distribution, therefore, are preempted by the Code. National Collection Agency, Inc. v. Trahan, 624 F.2d 906 (9th Cir.1980).
 
 
 39
 Section 554 of the Code serves the purpose of expeditious and equitable distribution by permitting the trustee to abandon property that consumes the resources and drains the income of the estate. State laws that require the trustee to maintain such property may be preempted. See In re Oklahoma Refining Co., 63 B.R. 562, 565-66 (Bankr.W.D.Okl.1986) ("To require strict compliance with State environmental laws ... would derogate the spirit and purpose of the bankruptcy laws requiring prompt and effectual administration within a limited time period.").
 
 
 40
 Preemption by the Supremacy Clause, however, is a question of Congressional intent. Hines, 312 U.S. at 66-67, 61 S.Ct. at 403-04. In Midlantic, the Court found that Congress did not intend section 554 to preempt all state laws. 474 U.S. at 506, 106 S.Ct. at 762. Nevertheless, the Court did not suggest that a radical disruption of effectual administration of bankrupt estates under the Code was appropriate. Rather, in describing the contours of the exception, the Court appears to have intended to fashion a narrow exception to the trustee's abandonment power in order to protect public safety rather than a broad exception to shield the state treasury. See Midlantic, 474 U.S. at 506, 106 S.Ct. at 762 (Congress's concern regarding imminent and substantial endangerment to public health or the environment cited as support for the holding). According to the teachings of Midlantic, where the public health or safety is threatened with imminent and identifiable harm, abandonment of the contaminated property must be conditioned on the performance of procedures that will adequately protect public health and safety. Id. at 507, 106 S.Ct. at 762.
 
 
 41
 Admittedly, this public health exception to the trustee's abandonment power runs counter to the expeditious distribution purpose of the Code. However, as the Midlantic Court recognized, where conditions on property pose a danger of imminent death or illness, the person in control of such property should not be permitted to abandon it with such conditions unattended. See Midlantic, 474 U.S. at 499 n. 3, 106 S.Ct. at 754 n. 3 (abandonment believed to present risks of explosion, fire, contamination of water supplies, genetic damage, death and other dangers). Congress must not have intended to permit abandonment under such circumstances, so that there is no preemption under the Supremacy Clause. But this narrow exception applies where there is a serious health risk, not where the hazards are speculative or may await appropriate action by an environmental agency. Midlantic, 474 U.S. at 507, 106 S.Ct. at 762.
 
 
 42
 The Bankruptcy Court does not have the power to substitute its judgment for that of the state as to what constitutes a serious public health or safety risk. After all, it is the state law that relates to environmental concerns and, indeed, the focus of Midlantic is on that very concern. The bankruptcy court, therefore, must determine whether the risk of imminent harm exists in reference to the design of the state law or regulation alleged to have been violated. Midlantic, 474 U.S. at 507 & n. 9, 106 S.Ct. at 762 & n. 9.[5] Before any abandonment is permitted, the court is powerless to authorize such action without conditions that will adequately protect the public's health and safety in accordance with the governing state law. Id. at 507, 106 S.Ct. at 762.
 
 
 43
 The bankruptcy court determined that there was no threat of immediate harm. Indeed, the Illinois Environmental Protection Agency had not taken any enforcement action. Cf. In re Purco, Inc., 76 B.R. 523, 533 (Bankr.W.D.Pa.1987) (inactivity of agency indicates lack of threat to public health or safety). Said determination is not clearly erroneous.
 
 
 44
 The district court, contra to the bankruptcy court's conclusion, held that the financial condition of the debtor is irrelevant to the Midlantic analysis. This Court disagrees. Cleaning up environmental violations is properly considered an administrative expense within the meaning of 11 U.S.C. Sec. 507(a)(1). While such expense would be subordinate to secured claims, it would have priority over unsecured claims. Accordingly, where the estate has unencumbered assets, the bankruptcy court should require stricter compliance with state environmental law before abandonment is permitted. Smith-Douglass, however, had no unencumbered assets.
 
 
 45
 We affirm the finding that unconditional abandonment was appropriate in light of the estate's lack of unencumbered assets, coupled with the absence of serious public health and safety risks posed by the conditions in this case, but reject the trial court's conclusion that the financial condition of the debtor was irrelevant.
 
 
 46
 AFFIRMED.
 
 
 
 [1]
 Subsequent to the bankruptcy court's decision on this matter, this bankruptcy case was converted to a Chapter 7 liquidation and Gregory B. Crampton was named trustee
 
 
 [2]
 As former owners of the Streator facility, Borden and Garrett are potentially liable for the cost of cleaning up the environmental hazards
 
 
 [3]
 11 U.S.C. Sec. 554(a) provides: "After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." A debtor in possession has substantially the same powers as a trustee. 11 U.S.C. Sec. 1107
 
 
 [4]
 At the outset, the Court wishes to point out what this case is not about. The Court is not making a determination as to who will ultimately be liable for the cost of cleaning up any existing violations. Cf. Midlantic, 474 U.S. at 498 n. 2, 106 S.Ct. at 758 n. 2. However, a decision here adverse to the state may increase the likelihood of the state's bearing at least some of the cost
 
 
 [5]
 That is not to say that any violation of a law designed to protect public health and safety from imminent harm would preclude abandonment. Speculative and indetermine future violations, for example, of such laws would not prevent unconditional abandonment. Midlantic, 474 U.S. at 507 n. 9, 106 S.Ct. at 762 n. 9