## In re SHEFFIELD OIL CO., INC., Debtor.

### Bankruptcy No. 92–04719–APG.

United States Bankruptcy Court, M.D. Alabama.

Nov. 29, 1993.

H. Dean Mooty, Jr., Capell, Howard, Knabe & Cobbs, P.A., Montgomery, AL, for movant.

Larry E. Craven, Alabama State Military Dept., Montgomery, AL, for Armory Com'n of Alabama.

B. Kincey Green, Jr., Reeves & Stewart, Selma, AL, for City of Selma.

John E. Pilcher, Pilcher & Pilcher, P.C., Selma, AL, for Dallas County Bd. of Educ.

William J. Gamble, Gamble, Gamble, Calame & Wilson, Selma, AL, for Stockmans.

## OPINION ON OBJECTIONS TO ABANDONMENT AND REJECTION OF EXECUTORY CONTRACTS

A. POPE GORDON, Bankruptcy Judge.

The trustee filed a notice under 11 U.S.C. § 554(a) of intent to abandon any interest of the debtor in 110 underground petroleum storage tanks located in Alabama.[1]

The trustee simultaneously filed a motion under 11 U.S.C. § 365 to reject executory contracts or unexpired leases relating to these tanks.[2]

The underground storage tanks are located on 45 different sites in Alabama. The debtor does not own any of the sites on which the tanks are located.

The landowners of four of the sites on which 17 of the tanks are located filed objections to the proposed abandonment and the motion to reject.[3]

The objections were heard August 24, 1993 and September 21, 1993. The court requested briefs on the issues of law raised by the objections.[4]

The following facts are undisputed.

The debtor and its predecessors have maintained the underground storage tanks, exclusive of the landowners.

Seven tanks located on property of the Dallas County Board of Education are adjacent to public school grounds.

The debtor ceased maintenance of all customers' tanks and transferred its interest to other oil companies beginning shortly before filing the bankruptcy petition.[5]

The chapter 7 trustee has made no effort to determine whether the debtor complied with Alabama environmental laws while the debtor maintained the tanks.

However, it is undisputed that the debtor did not comply with applicable statutes requiring payment of annual tank fees into the Alabama environmental trust fund.[6]

The trustee has not tested either the tanks or the property upon which the tanks are located to determine whether an environmental violation has occurred.

However, the trustee is not aware of the existence of an environmental violation at any of the sites.[7]

The landowners contend that before the trustee can abandon the tanks, the trustee is required to use unencumbered estate funds to determine whether an environmental violation has occurred.

1. The trustee is not certain the debtor owns the underground storage tanks. The tanks are registered in the debtor's name with the Alabama Department of Environmental Management. Registration of underground storage tanks is required pursuant to the Alabama Underground Storage Tank and Wellhead Protection Act of 1988, Ala.Code § 22–36–1 et seq. (1975).

2. 11 U.S.C. § 365 allows the trustee, subject to the court's approval, to "assume or reject any executory contract or unexpired lease of the debtor."

3. Objections to the proposed abandonment were filed by the Dallas County Board of Education with 10 tanks and William and Maxine Stockman with 3 tanks. Objections to the motion to reject were filed by Ross Hughes with 2 tanks, the Armory Commission of Alabama and the City of Selma with 2 tanks, and the Stockmans with 3 tanks.

4. Only the trustee and the Dallas County Board of Education filed briefs. The trustee's brief was accompanied by affidavits of the president of the debtor corporation and the chief of the groundwater branch of the water division of the Alabama Department of Environmental Manage-

ment. The trustee filed written stipulations of fact with the Stockmans, the City of Selma, and the Armory Commission of Alabama.

5. The debtor filed a petition under chapter 11 of the Bankruptcy Code which subsequently converted to a case under chapter 7. The chapter 7 trustee has not maintained or operated the tanks.

6. Payment of an annual underground storage tank fee for each registered tank is one of the requirements for an owner or operator to be in substantial compliance with Alabama environmental laws. Substantial compliance limits the liability of the tank owner for cleanup and other costs. See Ala.Code § 22–35–4 (1975).

The Alabama Department of Environmental Management withdrew its application to have the debtor's unpaid tank fees treated as an administrative expense.

7. Sonja Massey, Chief of the Groundwater Branch, Water Division of the Alabama Department of Environmental Management testified by affidavit that she is unaware "of any current releases or other environmental problems stemming from the [underground storage tanks] lo-

The trustee contends that the non-existence of any known, present, environmental problems allows the trustee to abandon the tanks unconditionally.

■ 11 U.S.C. § 554(a) allows the trustee to "abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." [8]

■ However, a trustee may not "abandon property in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards." *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection,* 474 U.S. 494, 507, 106 S.Ct. 755, 762, 88 L.Ed.2d 859 (1986). This restriction on the trustee's otherwise broad abandonment power is narrow:

This exception to the abandonment power vested in the trustee by § 554 is a narrow one. It does not encompass a *speculative* or *indeterminate future violation* of such laws that may stem from abandonment. The abandonment power is not to be fettered by laws or regulations not reasonably calculated to protect the public health

or safety from *imminent and identifiable harm.*

*Midlantic,* 474 U.S. at 507 n. 1c, 106 S.Ct. at 762 n. 1c (emphasis added).[9]

The court concludes that the restriction on the trustee's abandonment power does not require a trustee to spend estate funds to investigate for possible environmental violations where none are known to exist.

The restriction precludes abandonment only when abandonment would pose an "imminent and identifiable" harm to the public health or safety.[10] The restriction does not encompass a "speculative" or "indeterminate future violation" that may result from abandonment.[11]

■ Therefore a mere violation of environmental laws, without imminent harm, does not bar abandonment.[12]

■ In the case *sub judice,* no known, existing environmental violation has occurred.[13]

The Department of Environmental Management had notice of the proposed abandonment and filed no objection.

There is no evidence that the properties of the objecting landowners are listed by the

cated at the sites" in question with the exception of one site at which the tanks have been permanently closed. The affidavit does not disclose the nature of the suggested problem.

In addition, the parties stipulated that a witness for the School Board would testify that in his opinion, after twenty years of spillage, some soil contamination would occur.

However, no parties argued that any alleged contamination is in violation of environmental laws or regulations or presents an imminent threat to public health and safety.

8. The trustee has apparently concluded that it would not be cost effective to remove the tanks. The Stockmans and the Dallas County Board of Education contend that an evidentiary hearing should be held for the trustee to produce evidence of the value of the tanks being abandoned.

The court disagrees. Fed.R.Bankr.P. 6007 requires a hearing only if an objection is timely filed by a party in interest.

The landowners have not filed proofs of claim and are not creditors of the estate. The landowners have not made any offers to purchase the tanks although the tanks have value in place. Under these facts, the court concludes that the landowners are not parties in interest and have no standing to object to the economic aspect of the abandonment.

9. *New Mexico Env't Dep't v. Foulston (In re L.F. Jennings Oil Co.),* 4 F.3d 887 (10th Cir.1993) (abandonment of a filling station site with contamination in excess of 100 parts per million permitted because the contamination did not pose an immediate threat to public health or safety).

10. *Midlantic,* 474 U.S. at 507 n. 1c, 106 S.Ct. at 762 n. 1c.

11. *Midlantic,* 474 U.S. at 507 n. 1c, 106 S.Ct. at 762 n. 1c.

12. *See Borden, Inc. v. Wells–Fargo Business Credit (In re Smith–Douglass, Inc.),* 856 F.2d 12 (4th Cir.1988).

13. The trustee submitted the affidavit of the president of the debtor in which the president stated that he is

not aware of any environmental problems of any kind stemming from the underground storage tanks located at the various facilities ... and thus [is] not aware of any environmental problems including releases from underground storage tanks which have been reported to any regulatory agency including the Alabama De-

Alabama Department of Environmental Management on any contaminated site list.[14]

None of the landowners assert that the ground or surface waters on their lands are contaminated by fuel.[15]

■ The fact that some of the sites may be contaminated from ordinary usage is not sufficient to conclude that the contamination either violates environmental laws or poses an imminent threat to the public health and safety.[16]

The only evidence of violation of state environmental law at this time is the debtor's failure to pay annual tank fees into the Alabama Underground Storage Tank Trust Fund.

Under these facts, the court concludes that the trustee is not required to expend estate funds to search for possible environmental violations.

An appropriate order will enter separately allowing the trustee's proposed abandonment.[17]

### ORDER ON OBJECTIONS TO ABANDONMENT AND REJECTION OF EXECUTORY CONTRACTS

In accordance with the Opinion entered this day, it is hereby

ORDERED that the trustee is AUTHORIZED to abandon the property of the estate described in the July 30, 1993 notice of abandonment, and it is

FURTHER ORDERED that the trustee's July 30, 1993 motion to reject is MOOT because the contracts or leases referenced in the motion are deemed rejected under 11 U.S.C. § 365(d)(1).

partment of Environmental Management. To [his] knowledge, no such environmental problems exist on any of the referenced sites. In fact, the underground storage tanks at a number of the locations ... have, within the last several years been replaced with new tanks.

14. The director of the Department is empowered to determine which "incidents of water contamination related to the storage of motor fuels may pose a threat to the environment or the public health, safety or welfare." See Ala.Code § 22–35–4 (1975). There is no evidence before the court that the director has determined that any of the debtor's tanks pose such a threat.

In addition, there is no evidence that a civil or response action has been brought against the debtor by the Department or by third parties for damages as a result of contamination. See Ala. Code § 22–35–3 (1975) for definition of terms used by the Alabama Underground Storage Tank Trust Fund Act.

15. The protection of potable water is at the heart of the Alabama Underground Storage Tank Trust Fund Act. The Act establishes a fund for the investigation and rehabilitation of contamination sites and restoration of potable water supplies.

Ala.Code § 22–35–4 (1975). "[T]he preservation of waters is a matter of the highest urgency and priority as these waters provide a primary source of potable water in this state ..." Ala.Code § 22–35–1.

16. The Department of Environmental Management is aware of only one site which may contain contamination. See supra note 7.

17. The motion to reject executory contracts or unexpired leases related to the tanks is moot by operation of 11 U.S.C. § 365(d)(1), which states:

In a case under chapter 7 of [title 11], if the trustee does not assume or reject an executory contract or unexpired lease of ... personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such contract or lease is deemed rejected.

Given the contention of the landowners that the tanks belonged to the debtor, its predecessors and successors, it appears that the parties treated the tanks installed underground as personal property.